**IN THE COURT OF APPEALS OF IOWA**

No. 25-0409
Filed June 18, 2025

**IN THE INTEREST OF K.W.,**
**Minor Child,**

**K.L., Mother,**
      **Appellant.**
_____

Appeal from the Iowa District Court for Polk County, Brent Pattison, Judge.

A mother appeals the termination of her parental rights to her child.
**AFFIRMED.**

Teresa M. Pope of Pope Law, PLLC, Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

ConGarry D. Williams of Des Moines Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor child.

Considered without oral argument Greer, P.J., and Badding and Chicchelly, JJ.

**CHICCHELLY, Judge.**

A mother appeals the termination of her parental rights to her child, K.W., born in 2020.[1]  Upon our de novo review, we affirm the termination.

### I.     *Background Facts and Proceedings.*

The Iowa Department of Health and Human Services (the department) became involved with this family for the first time after receiving allegations of domestic violence between the parents in K.W.'s presence.  This investigation also revealed additional concerns about the parents' active substance use, leading to K.W.'s removal from his parents' custody.  After around fourteen months, K.W. returned home.

Approximately one year after the first case closed, the mother relapsed on methamphetamine.  The juvenile court removed K.W. again and placed him with his maternal grandmother, where he remained for the rest of the proceedings. K.W. was adjudicated as a child in need of assistance, and the department tried to work with the parents to reunify.  But while the department provided numerous resources, providers found it difficult to work with the mother, describing her as "very hostile."  In particular, the mother's relationship with the placement was high conflict.  Their interactions escalated early in the proceedings after the mother accused the placement's paramour of sexually abusing K.W.  The mother refused to return him after a visit, which resulted in an investigation.  But the abuse allegations were never substantiated, and the juvenile court described them as "a

---

[1] The father's parental rights were also terminated during a separate termination hearing.  He appealed, and we affirmed the termination of his parental rights.  *In re K.W.*, No. 24-1242, 2024 WL 4965895 (Iowa Ct. App. Dec. 4, 2024).

distraction from the undisputed issues in the case—addressing the parents' long history of substance abuse, mental health struggles, and domestic violence."

Throughout the proceedings, the mother's road to recovery was inconsistent. At the beginning of the case, the mother admitted to "using methamphetamine and heroin intravenously" and tested positive for methamphetamine. But after a few months, the mother refused to comply with additional drug testing and accused the department of "messing with the tests." When the mother did agree to test, she had only brief periods of sobriety before using illegal substances again, such as methamphetamine, THC, cocaine, or fentanyl.[2] In the weeks before the State petitioned to terminate, the department began noticing physical indicators of the mother's substance use, specifically "bright red meth marks on each side of her face." But mid to late-2024, the mother engaged in methadone treatment,[3] after which her tests were generally positive for only methadone and THC. As for the mother's mental health, she initially refused to sign releases of information or take her medications as prescribed. And while she did eventually start treatment, her participation was inconsistent until just before the second termination hearing.

Finally, the mother failed to address the department's concerns about her romantic relationships. Despite their relationship being the catalyst for the first

---

[2] The parties disagree whether the mother was "sober" because she continued to test positive for THC until three weeks before the January 2025 termination hearing. We do note that the mother does not have an Iowa medical cannabidiol registration card, which would permit her to consume medical cannabidiol in non-smoking methods. *See* Iowa Code §§ 124E.4, .17 (2025).

[3] We have previously recognized methadone as "a synthetic addictive narcotic drug" used "in the treatment of heroin addiction." *In re G.B.*, No. 22-0439, 2022 WL 1657190, at *1 n.2 (Iowa Ct. App. May 25, 2022) (citation omitted).

CINA proceeding, the mother still maintained contact with the father against the department's directives. And while the parents ended their relationship before the termination hearing, the mother then "became involved with another person who has his own substance abuse and domestic violence history." This led to another founded child abuse assessment because the mother was supervising her new paramour's daughter.

An initial termination hearing occurred in July 2024, after which the court terminated the father's parental rights but granted the mother a six-month extension to work towards reunification. The court found that while the mother's engagement in substance-use and mental-health treatments were lacking, she had made some improvements. The mother secured housing and employment, participated in other department services, and improved her relationship with K.W.'s placement. But less than one month into her extension, the mother again tested positive for cocaine, alcohol, and THC. Although this was considered a setback by the department, her social work case manager testified that the mother's acknowledgement of her cocaine use was a success.[4] This resulted in the department's willingness to start semi-supervised visits with K.W. in December 2024.

The State petitioned for termination of the mother's parental rights again. A second termination hearing occurred in January 2025, at which the mother contested termination and requested another six-month extension or, in the

---

[4] While the mother initially took accountability for her cocaine use, she testified at the termination hearing that she had never used. The juvenile court took special notice of this in its order, as the mother's inability to take accountability for and maintain her sobriety was "especially important" to its decision to terminate.

alternative, a guardianship with the maternal grandmother. The juvenile court disagreed and terminated the mother's parental rights. The mother appeals.

## II. Review.

Our review of termination-of-parental-rights proceedings is de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (citation omitted).

## III. Discussion.

The mother challenges each step of the termination of her parental rights in our three-step analysis: (1) the statutory grounds for termination; (2) the best-interests-of-the-child determination; and (3) permissive exceptions to termination. *See id.* at 472–73. The mother also reasserts her requests for a six-month extension or guardianship as alternatives to termination. We address each argument in turn.

### A. Statutory Grounds for Termination.

The mother first argues that the statutory grounds for termination were not met. The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(f), finding:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The mother only challenges the fourth element: whether K.W. could be returned to her custody at the time of the termination hearing. Iowa Code § 232.116(1)(f)(4); *see also In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" to mean "at the time of the termination hearing").

The juvenile court found that K.W. could not be returned to his mother's custody, and we agree. Even before her six-month extension, the mother had failed to adequately address the circumstances which led to K.W.'s removal. While she had made some progress, she failed to maintain her sobriety or comply with the department's recommendations for substance-use treatment. Even after being granted an additional six months, the mother continued to struggle and did not fully take advantage of the litany of services offered by the department. While the juvenile court praised the mother's improvements with her mental health, it described her testimony regarding her sobriety as "less convincing" and found she was unable to take accountability for her substance use. The court also noted its concerns about the mother's new relationship, which has already led to an additional founded child abuse assessment.

While the mother cites her expanded visitation as evidence of her ability to parent, this is not enough. The juvenile court specifically noted the department's testimony, in which the social work case manager testified that had she known about the mother's unwillingness to take accountability for her cocaine use, "she likely would not have allowed visits to expand in December of 2024." But more importantly, graduation to semi-supervised visitation is insufficient. "Without this necessary progression [to unsupervised visits], we cannot say the child[] could have returned to the mother's care." *In re C.N.*, No. 19-1861, 2020 WL 567283,

at *1 (Iowa Ct. App. Feb. 5, 2020). Accordingly, we find that the statutory ground for termination has been met.

### B. Best Interests of the Child.

The mother similarly argues that termination is not in the best interests of the child. We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *See In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016) (citation omitted).

The juvenile court similarly concluded that termination is in K.W.'s best interests. While the mother has made some progress, "[t]ime is a critical element" in termination proceedings. *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). "A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting." *Id.* While we commend the steps the mother has taken to improve herself, K.W. deserves permanency. In just five years of his short life, K.W. has spent nearly three years away from his mother. *See id.* (finding the child's considerable time out of the home favors termination). In that time, the social work case manager testified that K.W. has bonded with his maternal grandmother, who is willing to adopt. We therefore find termination is in K.W.'s best interests.

*C. Permissive Exception to Termination.*

The mother then asks us to apply a permissive exception to termination based on a parent-child bond. *See* Iowa Code § 232.116(3)(c) (establishing a discretionary exception to termination upon finding "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). The burden is placed on the parent to show that an exception to termination applies. *A.S.*, 906 N.W.2d at 476. We do not find that the mother met such a burden. "Any bond that exists between [the mother] and the child in this case is limited considering the child's young age and the time he has spent out of [her] care." *In re D.S.*, 806 N.W.2d 458, 475 (Iowa Ct. App. 2011). Further, in his mother's absence, K.W. has bonded to his maternal grandmother, who is a preadoptive placement option. *See id.* (finding that the child's successful integration into a foster family willing to adopt favors termination). We therefore decline to apply a permissive exception to termination based on a parent-child bond.

*D. Six-Month Extension.*

Next, the mother requests another six-month extension. *See* Iowa Code § 232.104(2)(b) (permitting the juvenile court to grant an extension to work towards reunification if "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period"). In particular, she cites her recent progress, especially her expanded visitation and sobriety, as justification for the extension.

But the juvenile court found that a six-month extension would not change the outcome, and we agree. For the reasons discussed previously and based on

the mother's history of instability, we are not confident in her ability to care for K.W. *See In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020) (considering the "parents' past performance" to "indicate the quality of care the parent is capable of providing in the future" (citation omitted)). More importantly, K.W. has spent a considerable portion of his short life waiting for his mother to learn to care for him, and he deserves permanency. *See In re W.T.*, 967 N.W.2d 315, 324 (Iowa 2021). We therefore decline to apply another six-month extension.

*E. Guardianship.*

Lastly, the mother requests a guardianship with the maternal grandmother in lieu of termination. Despite the mother's argument that "termination offers little by way of being 'more permanent' than guardianship," we strongly disagree. "[A] guardianship is not a legally preferable alterative to termination." *A.S.*, 906 N.W.2d at 477 (citation omitted). Because guardianships require at least annual reporting requirements and can be terminated at any time, a guardianship is by nature *impermanent*. *Id.* at 477–78. While there are certain circumstances warranting a guardianship, we do not find that this is one of them. Due to K.W.'s age, any guardianship could last more than a decade. *See id.* at 478 (considering the tender age of the child in declining to establish a guardianship). And as the juvenile court found, the mother has "a long history in this case of conflict" with the maternal grandmother, once even refusing to return K.W. to the maternal grandmother's care. The court further noted that the mother and placement "have fought over issues as mundane as haircuts." The mother's poor relationship with the potential guardian does not convince us that a guardianship would be in K.W.'s best interests. *Id.* (considering the parent's relationship with the potential guardian in

determining whether a guardianship is in the child's best interests). Instead, we find termination to better serve K.W.'s interests and allow him to achieve permanency. Accordingly, we affirm the termination of the mother's parental rights.

## IV. *Disposition.*

Finding the statutory grounds for termination have been met, the best interests of the child favor termination, and no extensions or exceptions to termination apply, we affirm.

**AFFIRMED.**